UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

```
MICHAEL EMERSON,              )
                             )
        Plaintiff,           )
                             )
        v.                   )    Case No. 2:23-cv-626
                             )
SHAW'S SUPERMARKETS, INC.,   )
and FRESH IDEATION FOOD      )
GROUP, LLC, d/b/a FRESH      )
CREATIVE CUISINE,            )
                             )
        Defendants.          )
```

## OPINION AND ORDER

Plaintiff Michael Emerson brings this diversity action against Defendants Shaw's Supermarkets, Inc. and Fresh Ideation Food Group, LLC, d/b/a Fresh Creative Cuisine ("Defendants") claiming he became ill after eating a sandwich prepared and sold by Defendants.  Pending before the Court is Defendants' motion for summary judgment.  For the reasons set forth below, the motion (ECF No. 47) is denied.

## Factual Background

On or about January 25, 2023, Emerson purchased a ham and cheese sandwich from Shaw's Supermarkets, Inc. ("Shaw's") in Woodsville, New Hampshire.  The sandwich was assembled at a Fresh Ideation Food Group, LLC, d/b/a Fresh Creative Cuisine ("Fresh Ideation") facility in Maryland.  Emerson kept the sandwich refrigerated before eating it two days later.  That

evening, he began experiencing symptoms that ultimately included diarrhea, vomiting, fever, rash, headaches, and muscle/body aches.

Emerson had purchased the sandwich in anticipation of a scheduled colonoscopy.  The colonoscopy occurred on the morning of January 27, 2023, and he ate the sandwich that afternoon.  In the two days prior to his colonoscopy, Emerson had been on a clear liquid diet with the exception of a few crackers and a diet soda given to him on the morning of the procedure.  When he became ill that evening, he initially believed he had a virus. On February 6, 2023, however, he noticed that Shaw's had sent him an email two days earlier warning him of the possibility of Listeria in the sandwich he had purchased.  When he discovered the email, he notified his medical provider about his symptoms. Emerson subsequently submitted a stool sample to Dartmouth Hitchcock Medical Center ("DHMC"), but DHMC lost the sample. The sandwich itself could not be tested, as it was fully consumed.

The Fresh Ideation facility in question was inspected on or about January 25, 2023.  The company was notified on February 3, 2023 that test results from its preparation areas were positive for Listeria.  Specifically, Listeria was discovered on the floor, drains, and a food wrapping machine.  The next day, Fresh Ideation issued a notice recalling products made in the

2

facility.  The notice included ham sandwiches that may have been
sold between January 24, 2023 and January 30, 2023.  Fresh
Ideation ultimately recalled 50,000 sandwiches.

Defendants' memorandum in support of summary judgment cites
a Food and Drug Administration ("FDA") report tracing instances
of the subject strain of Listeria.  The report was based upon
either stool samples or the testing of food remnants.  Counsel
submits that the FDA report did not list any individuals
impacted by the contamination discovered after the January 25,
2023 inspection of the Fresh Ideation facility.

Emerson objects to the FDA report as immaterial to the
specific facts of this case.  He also objects to Defendants'
counsel's assertion, based on information from the Centers for
Disease Control and Prevention ("CDC") website, that the typical
incubation period for Listeria is over seven days.  Emerson
submits that such research is inadmissible and may not be
considered at summary judgment.

Emerson has timely disclosed several experts.  Those
experts include his treating physicians and physicians'
assistants.  Sarah Milbridge, P.A., will reportedly testify that
Emerson suffered from listeriosis following consumption of the
sandwich, and that his illness responded positively to
medication.  James Heckman, M.D., will testify that listeriosis
proximately caused Emerson to suffer an acute kidney injury.

Branavan Ragunanthan, M.D., will testify that listeriosis also led to chronic kidney disease.

Additionally, Emerson has disclosed Richard E. Sutton, M.D., Ph.D., a Professor of Internal Medicine at Yale School of Medicine. Dr. Sutton states in his report:

> More likely than not, based upon my education, training, and experience, the sandwich Mr. Emerson ate in late January 2023 caused him to become ill with listeriosis. But for his consumption of the ham and cheese sandwich he would not have become ill with Listeria monocytogenes gastrointestinal disease. In other words, consumption of the ham and cheese sandwich on January 27, 2023 was the proximate cause of Mr. Emerson's illness. My opinion is based upon Mr. Emerson's clinical presentation to DHMC, his response to the prescribed oral antibiotic, the presence of Listeria monocytogenes at the facility where the sandwich was prepared, the recall notice issued by the company that made the sandwich, and the notice from Shaw's that the sandwich could be contaminated with listeria.

ECF No. 50-7 at 6-7.

The Amended Complaint asserts six causes of action. Count I claims strict product liability on the basis of an unreasonably dangerous food. Count II alleges strict product liability for failure to warn. Count III alleges that Shaw's is liable for breach of implied warranty. Counts IV and V allege that Defendants are liable for negligence and negligence *per se*, respectively. Finally, Count VI alleges Defendants are liable for negligent misrepresentation.

4

Defendants now argue that they are entitled to summary judgment on all claims because Emerson is unable to produce evidence of causation for his illness.

## Discussion

### I.    Summary Judgment Standard

Under Federal Rule of Civil Procedure 56, summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law."   Fed. R. Civ. P. 56(a).   A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the [non-movant]."   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).   A dispute of fact is "material" if it "might affect the outcome of the suit under the governing law. . . .   Factual disputes that are irrelevant or unnecessary will not be counted."   *Id.*

In determining whether a genuine issue of material fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the movant.   *Id.* at 255.   In addition, "[the movant] bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the . . . [record] which it believes demonstrate[s] the absence of any genuine issue of material fact."   *Celotex v. Catrett*, 477 U.S. 317, 323-24

(1986).  When the movant has met its initial burden, the non-movant must come forward with specific facts showing a genuine issue of material fact for trial.  Fed. R. Civ. P. 56(a), (c), (e).

## II.  Unreasonably Dangerous Food

Defendants first move for summary judgment on Emerson's strict liability cause of action based on an unreasonably dangerous food.  Under Vermont law, a plaintiff alleging strict product liability "must show that the defendant's product (1) is defective; (2) is unreasonably dangerous to the consumer in normal use; (3) reached the consumer without undergoing any substantial change in condition; and (4) caused injury to the consumer because of its defective design."  *Farnham v. Bombardier, Inc.*, 161 Vt. 619, 620 (1994) (citing Restatement (Second) of Torts § 402A (1965)); *see Zaleskie v. Joyce*, 133 Vt. 150, 154-55 (1975) (adopting § 402A "strict product liability" in Vermont).  A product is defective if it is not "safe for normal handling and consumption."  *Id.* (quoting Restatement (Second) of Torts § 402A, comment h).  "'[U]nreasonably dangerous' means the product is 'dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics.'"  *Id.* (quoting Restatement (Second) of Torts § 402A, comment i).

6

Defendants argue that Emerson has failed to show the sandwich was unreasonably dangerous. Specifically, they contend there is no direct evidence that the sandwich contained Listeria, in part because it was never tested. Viewing the facts in the light most favorable to the non-moving party, however, the Court finds there are genuine issues of fact in dispute with respect to causation. While there may not be direct evidence of contamination, there is certainly circumstantial evidence from which a reasonable jury could find the sandwich made Emerson ill. *See Allstate Ins. Co. v. Hamilton Beach/Proctor Silex, Inc.*, 473 F.3d 450, 455 (2d Cir. 2007) (citing *Travelers Ins. Cos. v. Demarle, Inc.*, 178 Vt. 570, 574 (Vt. 2005)). That evidence includes the discovery of Listeria at the production facility, the illness coinciding with the product recall, and the medical experts' identification of Emerson's symptoms and responses to treatment as consistent with Listeria-caused disease. The motion for summary judgment with respect to Count I is therefore denied.

## III. Failure to Warn

Defendants next move for summary judgment on Emerson's strict liability cause of action for failure to warn. To establish a failure to warn claim, a "plaintiff must provide evidence from which a reasonable jury could find: (1) that defendant owed a duty to warn plaintiff; (2) lack of warning

7

made the product unreasonably dangerous, hence defective; and
(3) defendant's failure to warn was the proximate cause of
plaintiff's injury." *McCullock v. H.B. Fuller Co.*, 61 F.3d
1038, 1044 (2d Cir. 1995) (citing *Menard v. Newhall*, 135 Vt. 53,
54 (1977)). Defendants argue that Emerson cannot show proximate
cause because he has no evidence of Listeria in either the
sandwich or his body. Defendants also contend, based upon
counsel's internet research, that according to "accepted medical
knowledge" Emerson's symptoms occurred "well before any typical
case of Listeria" would have caused such symptoms. ECF No. 47-1
at 6.

Defendants' causation argument again does not warrant
summary judgment, particularly given the circumstantial evidence
discussed previously. Counsel's representation about an alleged
body of medical knowledge is unavailing. Even if the Court
takes judicial notice of the CDC information submitted by
counsel (ECF No. 47-9), Emerson's medical experts collectively
attribute his illness to Listeria, thus creating at least a
genuine issue of material fact as to the cause of illness. The
motion for summary judgment on Count II is denied.

## IV. Breach of Implied Warranty

Defendants argue that Emerson's claim for breach of implied
warranty fails because there is no evidence the sandwich was
contaminated. "A seller of food items is liable for breach of

implied warranty where the food is not 'wholesome and fit for human consumption at the time of purchase.'" *Morris v. Nutri/Sys., Inc.*, 774 F. Supp. 889, 891 (D. Vt. 1991) (quoting *DiGregorio v. Champlain Valley Fruit Co., Inc.*, 127 Vt. 562, 565 (1969)). Once again, Defendants cite a lack of direct evidence. They also submit that Emerson reported the product recall to his health care providers, who merely proceeded on the assumption that he was suffering from a bacterial infection. Defendants further contend that Emerson's symptoms could have been caused by a bacterial infection other than Listeria.

Defendants' arguments overlook the series of events that arguably support Emerson's theory of the case. Those events, noted by Dr. Sutton, include: Emerson's symptomatic presentation at DHMC; the recall notice based on the presence of Listeria; the email from Shaw's; and Emerson's response to antibiotics. Given those events, a reasonable jury could find that the sandwich was the cause of Emerson's illness and thus was not fit for human consumption at the time of purchase. The motion for summary judgment on Count III is denied.

## V.  Negligence

"Common-law negligence has four elements: a legal duty owed by the defendant to the plaintiff, a breach of that duty, injury to the plaintiff, and a causal link between the breach and the injury." *Sutton v. Vermont Reg'l Ctr.*, 2019 VT 71A, ¶ 26.

Defendants argue that Emerson is unable to show breach, defect, or proximate cause.  There is no dispute that Defendants owed a duty of care to their consumers.  Whether that duty was breached depends on the findings of fact.  Viewing the facts in light most favorable to Emerson, Defendants allowed him to purchase a sandwich that was contaminated and that led to his illness.  A jury may disagree with those conclusions, but the current record presents genuine issues of material fact that cannot be decided as a matter of law at summary judgment.  The motion for summary judgment with respect to Count IV is denied.

## VI.  Negligence *Per Se*

The Amended Complaint claims Defendants were negligent *per se* in that the labeling on the sandwich failed to provide appropriate information.  Such a cause of action typically alleges violation of a relevant rule or statute.  *See, e.g., Simpson v. Rood*, 2005 VT 21, ¶ 5 ("Negligence *per se* requires a jury to find a defendant negligent if the plaintiff proves that the defendant violated a relevant safety statute."); *Bacon v. Lascelles*, 165 Vt. 214, 222 (1996) (explaining that proof of violation of a safety statute creates a *prima facie* case of negligence which is only a rebuttable presumption).  While Emerson's pleadings do not reference a rule or statute, Defendants appropriately assume that any relevant statute would pertain to food safety.

10

Defendants' argument with respect to Count V, much like the rest of their motion, is premised on the conclusion that Emerson cannot establish contamination.  For reasons set forth above, the Court declines to reach that conclusion as a matter of law given the genuine issues of fact in dispute.  The motion for summary judgment on Count V is denied.

**VII. Negligent Misrepresentation**

The Vermont Supreme Court has adopted the following definition of negligent misrepresentation from the Restatement (Second) of Torts:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

Restatement (Second) of Torts § 552(1) (1977).  The Amended Complaint alleges Defendants negligently misrepresented the nature and qualities of the sandwich.  Defendants contend that there can be no such misrepresentation because there is no proof that the sandwich contained Listeria.  For reasons discussed above, there is sufficient circumstantial evidence of contamination for this claim to survive summary judgment. Defendants' motion for judgment on Count VI is therefore denied.

**<u>Conclusion</u>**

For the reasons set forth above, Defendants' motion for summary judgment (ECF No. 47) is denied.  A pretrial conference is now scheduled in this matter on Monday, April 14, 2025 at 3:30 p.m.


DATED at Burlington, in the District of Vermont, this 4th day of March, 2025.

<u>/s/ William K. Sessions III</u>
Hon. William K. Sessions III
District Court Judge